JAMES MILLIGAN, alias "JIMMIE" MILLIGAN, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

147 So. 260.

Opinion filed March 23, 1933.

220

*Bart A. Riley, J. Aron Abbott* and *Frank Clark, Jr.*, for Plaintiff in Error;

*Cary D. Landis, Attorney General,* and *Roy Campbell, Assistant,* for the State.

BIRD, Circuit Judge.—On the thirty-first day of Decem-

ber, A. D. 1931, Dr. Frank D. Palmer was killed at his drug store in the city of Miami, when an attempt to rob him or the store was made. On the twelfth day of January, 1932, the defendant, James Milligan, Clarence D. Casey, Frank Moulton and Cecil James were indicted for his murder.

The defendant, Milligan, was arrested on the seventh day of January, 1932, and placed in jail. On the twelfth day of January, 1932, the indictment was presented in the Circuit Court and on that day the court appointed the Honorable Frank Clark, Jr., to represent the defendants, Milligan and Casey. Upon. arraignment, the defendants Moulton and James entered a plea of guilty and the defendants Casey and Milligan entered a plea of not guilty.

On the fourteenth day of January, 1932, the defendant, Casey, withdrew his plea of not guilty and entered a plea of guilty and the case proceeded to trial against James Milligan who was convicted of murder in the first degree without recommendation; sentence was imposed upon him and he brings writ of error to review the judgment.

A severance was granted the State when the defendants, Moulton and James, entered their plea of guilty and another severance was granted the State when the defendant Casey plead guilty.

It is earnestly contended by counsel for plaintiff in error that the evidence is insufficient to support the verdict and the court erred in denying a motion for a new trial. Because of the earnestness with which this assignment is argued and the extreme penalty provided, we deem it advisable to briefly discuss the evidence.

About a quarter of ten o'clock on the evening of the thirty-first day of December, 1931, Dr. Frank D. Palmer and one J. R. Singleton were in the Palmer Drug Store in Miami, playing miniature pool, when two persons ap-

peared, one wearing a raincoat, the other wearing a felt hat pulled down over his forehead, and a dark suit of clothes, and ordered Dr. Palmer and Singleton to hold up their hands. Dr. Palmer resisted and was killed by the man wearing the raincoat. At the trial J. R. Singleton positively identified the defendant Milligan as the man who covered him with a pistol and ordered him to hold up his hands. Frank Moulton and Cecil James testified that they and Clarence D. Casey and the defendant Milligan went to the drug store, having previously decided to rob it, and that Moulton and James remained on the outside for the purpose of stopping persons from entering while Casey and Milligan went into the drug store to commit the robbery, and that shortly after Casey and Milligan entered the store they heard the shooting and Casey and Milligan ran out and they all entered the automobile and sped away.

The defendant Milligan, his co-defendant, Casey, and a woman, testified that Milligan was not in the party and knew nothing of the hold-up. Casey testified that he was the instigator of the plan and that Milligan was not present and knew nothing of it. Milligan and the woman testified that they were living together as man and wife, although unmarried, and that Milligan did not leave his home on the night of the attempted robbery after seven o'clock in the evening until five o'clock in the morning when he left to go out on his ice delivery route. Milligan testified that he did not at that time have or own a hat or dark suit of clothes. The woman testified that she and Milligan occupied the same bed that night, that they retired about nine o'clock and he did not leave the house. She admits that she testified before the Grand Jury that she was Milligan's housekeeper and occupied a different room and bed from Milligan on the night of the attempted robbery and that she

did not know whether he left the house at any time during the night.

Casey also testified that Cecil James was the person who entered the drug store with him, and that one Della Seymour was left in the car to keep the motor running while he and James were committing the robbery. He does not testify what part Moulton was to play, except that he stood outside. Viola Martin and Marcus Miller testified that Della was at her home on the night of the robbery and did not leave it.

Other witnesses for the State testified to other facts and circumstances which we have considered, but do not think it necessary for us to discuss at this time.

The jurors, for aught that appears, fair and impartial, whose duty it was to hear, consider, compare and weigh the evidence, and who were privileged to see and hear the witnesses and observe their demeanor on the stand, and who were charged by law to consider the degree of intelligence manifested by the witnesses; their interest, if any, in the outcome of the trial; their prejudice or bias; and their opportunities for seeing and knowing the thing about which they have testified, have found the issue against the defendant, and the trial judge, a man eminently fair and of great learning and experience, has approved their verdict. We see no reason to disturb it.

It is the settled law of this State that where there is sufficient evidence to support the finding of the jury, even though the evidence be conflicting, this Court will not reverse the ruling of the trial judge, overruling a motion for a new trial, based upon the ground that the verdict is against the weight of the evidence and contrary to the evidence.

Williams v. State, 45 Fla. 128; 34 So. 279; .

McNish v. State, 47 Fla. 66; 36 So. 175;

Logan v. State, 58 Fla. 72; 50 So. 536.

It is next contended that the defendant was a minor and that his father should have been formally notified of the trial, as required by Section 8322, Compiled General Laws. The defendant Milligan in his testimony stated that he was twenty years of age; the bill of exceptions discloses that on the thirteenth day of January, 1931, a year prior to the trial, the defendant obtained a marriage license and in his sworn application for such license gave his age as twenty-one years at that time. The record also discloses that the defendant had been married and divorced. On the hearing of the motion for new trial, counsel for defendant stated that the marriage had been annulled but the record of that proceeding is not before us and we have only the testimony of the defendant that he was divorced. However, we think that point immaterial, whether it was an annulment proceeding or a divorce that freed the defendant from his marriage. He had been married and the statute applies only to unmarried minors. The marital relation having been established, its dissolution by annulment or divorce does not revitalize the rights conferred by the statute. Aside from this, the bill of exceptions discloses that the mother of the defendant died when he was an infant and that the father had actual notice of the trial.

The State Attorney, in his affidavit incorporated in the bill of exceptions, fortified by several other affidavits, conclusively shows that the father of the defendant was actually notified of the trial; that he had visited the jail on several occasions and communicated with the defendant who had been therein confined for a week before the trial.

The affidavit of R. J. White, Deputy Sheriff, states that he discussed the trial with Mr. R. L. Milligan, the father of the defendant, before the trial and that Mr. Milligan

stated that "he knew nothing he could do for his son, inasmuch as he had counsel and that he didn't even know whether he would attend the trial."

There were no counter affidavits filed and we take it as established that the father of the defendant had actual notice that his son would be tried on the fourteenth day of January, 1932. This Court has held that "if the purpose of Section 6029 (Revised General Statutes, 1920), (now Section 8323 C. G. L.) is accomplished by actual notice to or knowledge of the father of the charge on which his minor son will be tried, a formal service of such notice may not be material or pre-requisite to the process of the trial." Pitts v. State, 88 Fla. 438; 102 So. 554. (Parenthesis supplied.)

There was no showing made or attempted to be made that the trial court or the executive officer of the court knew or had any reason to suspect that the defendant was a minor.

It is next contended that the court erred in admitting in evidence over the objection of the defendant the raincoat, the hat and the three pistols.

As to the raincoat: The witness Singleton testified that the man who shot Dr. Palmer wore a raincoat, and it is shown beyond question that Casey, who fired the fatal shot, wore the particular raincoat admitted in evidence. We think the court properly admitted it. It tended to demonstrate the faculties of observation and memory of the witness Singleton and was a circumstance to which the court and the jury were entitled.

As to the hat: Frank Moulton testified that this particular hat was worn by "Red" Casey on the night and at the time of the hold-up, and defendant Milligan testified that he did not have a hat at all and that he wore a cap

all the time. The witness Singleton said the man who covered him with a gun had on a hat. There was nothing about the hat or the raincoat which would, or could, inflame the minds of the jury and was unlike the evidence discussed in the case of Sutherland v. State (Ala.) 139 So. 110, so earnestly stressed by counsel. This evidence was more favorable to the defendant than the State, and, if error was committed in its introduction, which we do not hold, it was beneficial to the defendant and therefore harmless.

As to the pistols: It was shown that the three pistols, admitted in evidence, were used in the attempted robbery, Casey having two and his companion one. It is also shown that these pistols and at least two others were placed in the car when the defendants started out on the fatal enterprise and were in their joint possession until they dispersed.

The evidence also shows, though contradicted, that the four named persons combined together to commit the unlawful act of robbing this drug store.

In Pope v. State, 84 Fla. 428; 94 So. 865, this Court said:

"When several persons combine together to commit an unlawful act, each is criminally responsible for the acts of his associates committed in furtherance or prosecution of the common design; and if several persons combine to do an unlawful act, and in the prosecution of the common object a culpable homicide results, all are alike criminally responsible for the probable consequences that may arise from the perpetration of the unlawful act they set out to accomplish. The immediate injury from which death ensues is considered as proceeding from all who are present and abetting the injury done, and the actual perpetrator is

considered as the agent of his associates. His act is their act, as well as his own, and all are equally criminal."

We hold that no error was committed in admitting the articles in evidence.

"Evidence is not admissible merely because some of its elements or interwoven facts tend to prove more than is necessary on the issue being tried, when the unnecessary elements or parts are not readily separable, and their admission is, considering the entire case, not prejudical to the rights of complaining party." Thomas v. State, 85 Fla. 113; 95 So. 752.

In Mobley v. State, 41 Fla. 621; 26 So. 732; and reiterated in Reynolds v. State, 52 Fla. 409; 42 So. 373, this Court said:

"the rule with reference to the admissibility of indirect, collateral, or circumstantial evidence is that 'great latitude is to be allowed in the reception of indirect or circumstantial evidence.' It includes all evidence of an indirect nature, whether the inferences afforded by it be drawn from prior experience, or by a deduction of reason from the circumstances of the particular case, or of reason aided by experience. The competency of a collateral fact to be used as the basis of legitimate argument, is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or assist, though remotely, to a determination probably founded in truth."

In Thompson v. State, 58 Fla. 106; 50 So. 507, it is said: "Any legal evidence from which the jury may legitimately deduce guilt or innocence is admissible, if, when taken with the other evidence in the case, its relevancy appears."

It is next argued that the court committed error in fail-

ing to order a continuance in the case, because of insufficient time to prepare for the defense.

The defendant was taken into custody on the seventh day of January, 1932, arraigned on the twelfth day of January, and put upon trial on the fourteenth day of January, 1932.

Competent counsel was appointed by the trial Judge to represent the defendant and his co-defendant Casey, immediately upon the return of the indictment. Neither the defendant nor his counsel made any application to the court for a continuance of the cause and no complaint was made, until after conviction, that the defendant did not have sufficient time in which to prepare his defense, and then no showing was made that he was in any way prejudiced or hindered in his defense or that he would have been in any better position by a delay.

This Court held in Scott v. State, 101 Fla. 250; 134 So. 50; that the five days asked for by the defendant in that case in which to prepare his defense were not unreasonable and said:

"This Court does not take the position that one charged with crime, capital or otherwise, may not be tried promptly after the indictment is presented, but when the defendant, in due season, asks for a reasonable time in which to prepare his defense, the time should be granted unless there is a showing to the contrary."

We apprehend that if the defendant or his counsel felt that they did not have sufficient time within which to prepare his defense and had asked for a reasonable continuance the court, without hesitation would have granted it, but, since no additional time was requested and the defendant went to trial with his counsel, making no objection to the time allowed him, the court had the right to assume

that the time fixed for the trial was satisfactory to both defendant and his counsel and they desired a speedy trial.

The Constitution of Florida provides that in all criminal prosecutions the accused shall have a right to a speedy and public trial. We hold that where the case is set for trial and the accused fails to ask for more time to prepare for his defense, the court has the right to assume that the time set is satisfactory to the defendant and that he does not desire his trial delayed.

We have carefully examined the record in this case and feel that the defendant received a fair and impartial trial before a fair and conscientious judge; that he was represented by able and experienced counsel and that he was denied no constitutional or statutory right. The judgment is therefore affirmed.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.