211 So.2d 862 (1968)
Clarence SIMPSON, a/k/a Boobie, Appellant,
v.
The STATE of Florida, Appellee.
No. 67-424.
District Court of Appeal of Florida. Third District.
June 11, 1968.
Rehearing Denied July 24, 1968.
*863 Eugene P. Spellman, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Jesse J. McCrary, Jr., Asst. Atty. Gen., for appellee.
Before CHARLES CARROLL, C.J., and HENDRY and SWANN, JJ.
SWANN, Judge.
Clarence Simpson was found guilty by a jury, of murder in the first degree, and sentenced on May 23, 1962, to life imprisonment in a state prison. Simpson did not move for a new trial or seek appellate review of his conviction and sentence at that time.
Simpson then filed a petition for relief under Criminal Rule One, F.S.A. ch. 924 Appendix, in the trial court. This was denied and he appealed to this court where he was represented by the public defender who argued the appeal on his behalf. This court affirmed, opinion reported [May 19, 1964] in Simpson v. State, Fla.App. 1964, 164 So.2d 224. Simpson then appealed to the Florida Supreme Court where his appeal was dismissed in October, 1964. Simpson v. State, Fla. 1964, 169 So.2d 383.
On November 5, 1964, in proper person, Simpson filed his second motion in the Dade County Circuit Court to vacate the judgment and sentence under Florida Criminal Procedure Rule One. In this motion he set forth approximately fourteen *864 grounds for reversal. In order to clearly show the grounds relied upon to "collaterally attack" his judgment and sentence they are all set forth below:
* * * * * *
"Movant allege that all evidence was use against movant was unadmissable and without assistence of counsel through all movant interrogation and investigation. * * *
Movant allege that a photograph received from Miami Beach Polic Station that was taken in 1955. And receive in Miami Polic Station in November 21, 1961 and was taken to Catherine Wilson house to identify movant. Catherine Wilson witness for the State testified that she did not see movant come in the house and did not see movant go out the house. All she seen was eyeball. * * *
Movant allege that movant was arrested and accused of murder and charge without the aid of counsel. * * *
Movant allege that movant was interrogate without the aid of counsel and did not have anyone to inform movant of his counsel right.
Movant allege that movant was interrogate without assistance of counsel at any time. * * *
Movant allege that movant was not never once presence at the crime and was not never once have the pistol in prossession of movant. But it was a pistol use for evidence against movant. * * *
Movant allege that it was a statement by movant use for evidence without assistence of counsel. * * *
Movant allege that movant is ignorant within the meaning of the law, and have a low education, and is a layman to any statutes. * * *
Movant allege that it was a tape-recording use for evidence made between defendant Aubrey Henry and one Robert Hall during visiting hours at jail. * * *
Movant allege that it was a statement for use evidence by Eugenia Thomas stated that she told the boys as a mother warning who work for her if you will have to shoot, shoot low. * * *
Movant allege that it was a statement use for evidence against movant made by defendant Aubrey Henry written in Aubrey Henry handwriting stated that a long tall brown skin man approach him to make some fast money. * * *
Movant allege that it was a statement for use for evidence by defendant Joseph Milling, Jr. was not read in court. * * *
Movant allege that all witness unadmissable to testify against movant that the state received after indictment. * * *
Movant allege that this Honorable Court will service notice upon all witness in this cause and produce movant to testify in movant behalf, and request for releave to proceed in forma pauperis to the Court of Appeal. * * *
Movant allege that the Clerk will please prepar a transcript of the records in this cause, for transmission to movant for to prepare a brief in this cause. * * *"
* * * * * *
[The foregoing allegations are reproduced in their entirety, verbatim and uncorrected, only authorities have been omitted.]
This motion was denied without an evidentiary hearing by the trial court on November 18, 1964. On December 18, 1964, Simpson again appealed to this court. The record on that appeal discloses that Simpson did not complain of any denial or frustration of his right to appeal from the original judgment, as, indeed, he had not raised that point before the lower court.
During the pendency of that appeal, Simpson filed a petition for Writ of Habeas Corpus in the United States District Court for the Middle District of Florida. He then voluntarily filed a Motion to Dismiss the then pending second Rule One appeal to this court. An order was appropriately *865 entered by this court, showing that Simpson's appeal had been dismissed on his motion requesting a voluntary dismissal. So the trial court's order denying the second Rule One motion was final and was not reviewed by state appellate procedures due to the voluntary act of dismissal by Simpson.
The Federal District Court on July 23, 1965, issued its Writ of Habeas Corpus for the Petitioner, Simpson. The essential ground upon which the Federal District Court based the issuance of its Writ of Habeas Corpus is set forth below:
* * * * * *
"The essential allegation of the Petitioner [Simpson] upon the evidence and the law, was that subsequent to his conviction in the State court, his then counsel failed to move for a new trial or to file a notice of appeal and failed to advise Petitioner of his right to move for a new trial or to file a notice of appeal, and failed to advise Petitioner of the jurisdictional time limitations in which a Motion for New Trial or Notice of Appeal might be filed, and failed to advise Petitioner of the grounds then present, and which counsel in fact considered meritorious, which might have been advanced upon a timely Motion for New Trial or Appeal, and failed to advise Petitioner that counsel had not or would not do any of the foregoing things, but that new counsel might be obtained, or that Petitioner might attempt to proceed therewith in propia persona. Petitioner further asserted that his trial counsel failed to do any and all of the foregoing things when he knew, and should have known, that Petitioner was ignorant of all of the foregoing and knew, and should have known, that Petitioner relied upon him to invoke whatever post-conviction remedies then existed. * *"
* * * * * *
The State of Florida appealed from that district court order to the Fifth Circuit Court of Appeals. Wainwright v. Simpson, 360 F.2d 307 (5th Cir.1966). The Fifth Circuit stated:
"Further, Simpson's motion under Florida Criminal Rule 1, upon which he was never accorded a hearing, was broad enough to encompass his trial counsel's failure to move for a new trial or to file a notice of appeal. [Emphasis added.] In any event, it is now settled that `the exhaustion principal is a matter of comity, not a matter of jurisdiction.'
* * * However laudable his motive, court appointed counsel for Simpson had no authority, without consulting with or obtaining the consent of his client, deliberately, to forego Simpson's right to move for a new trial or to appeal." (Id. 360 F.2d at 309) [Footnotes omitted]
The district court was then reversed only because it had directed the State of Florida to re-try the defendant within 120 days or else he would be released and discharged. The Fifth Circuit remanded with instructions that appropriate orders be entered to allow the State a reasonable time in which to either re-try Simpson or to afford him adequate review of his judgment of conviction as if he had been represented by counsel on his motion for a new trial.
In a concurring opinion, Judge Coleman noted that
"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." [Emphasis added.] (Id. 360 F.2d at 310)
* * * * * *
There is no doubt that Florida provides corrective processes for a defendant in actions which set forth the grounds which were claimed by Simpson in the federal *866 courts, i.e., a denial of a right to appeal or move for a new trial, when properly raised. See Criminal Procedure Rule No. One; Henderson v. State, Fla.App. 1965, 174 So.2d 73; Indem. Fla.App. 1966, 183 So.2d 872; and Jackson v. State, Fla.App. 1964, 166 So.2d 194; Indem. Fla.App. 1965, 177 So.2d 353; Tolar v. State, Fla.App. 1967, 196 So.2d 1; Nelson v. State, Fla.App. 1968, 208 So.2d 506. The matters relied upon by the federal courts had never been raised or alleged by Simpson in any Florida trial or appellate court on his first Rule One motion, his second Rule One motion, or on the appeal from the denial of the second Rule One motion which Simpson, himself, voluntarily dismissed. Clearly, Simpson failed to exhaust the remedies available to him in the Florida courts. 28 U.S.C. § 2254 provides "an applicant [for Habeas Corpus] shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." [Emphasis added.]
Former Solicitor General Archibald Cox has stated that "the final word upon many of the details of state [criminal] trials has been transferred not only to the Supreme Court of the United States but also to the inferior Federal Courts." [Brackets ours.] Cox, The Warren Court (1968), quoted in The Wall Street Journal, June 5, 1968, p. 14, col. 1.
It seems that the increasing regulation of State criminal practice and procedure by the United States Supreme Court and the inferior federal courts has encouraged a corresponding loss of respect for law and order. Never before have we witnessed such a total disrespect for, disregard for and disobedience to law and order. One observes with mounting concern the dangerous psychological climate that is created when known criminals who have confessed to heinous crimes are released because of a technical defect in police procedure, when mass civil disorders and riots are condoned, and when student rebellion on a college campus is handled softly. Today, ironically, policemen are apparently automatically presumed to be guilty of brutality in any action they may take.
This dangerous psychological environment seems to have made possible the assassination of President Kennedy, Rev. King, Senator Kennedy, and others whom our country could ill afford to lose. Perhaps the time has come for a little more concern to be shown for the right of the great majority to live quietly and peacefully in their communities, and greater effort made to enforce law and order rather than erode it.
If we do live in a sick, violent, or criminal society, it appears that the blame lies in the failure of the executive, legislative and judicial branches of the federal government and not in the various states.
Notwithstanding the failure of the defendant, Simpson, to raise any of the issues seized upon by the federal courts in any court of the State of Florida, and notwithstanding his failure to exhaust what we have shown to be available state remedies, we have decided, in view of the apparent disposition of many federal courts to re-try and release prisoners convicted in state courts, to consider and discuss the questions raised in this collateral attack on his judgment herein.
Appellant's first point is directed to the trial court's having allowed his confession to be introduced into evidence when it had neither been signed by him nor read to, or by, him and acknowledged to be correct. Appellant's reliance is placed upon Williams v. State, Fla.App. 1966, 185 So.2d 718.
At the outset it is important to stress that the appellant's attack here is not directed to either the voluntariness of the confession, which was tested in the trial court, or the accuracy of the statement attributed to him by the confession which was transcribed by a stenographer.
*867 Appellant's argument here is directed to evidentiary matters, technical in nature. Although the appellant was represented at trial by able trial counsel, no specific objection was raised to the admission of the confession on the ground that the written statement had not been read to him or that he had not adopted it. The appellant's trial counsel did attempt to challenge the voluntariness of the confession and, after hearing the objections, the confession was held to have been voluntary. Where fundamental error is not involved, a defendant must properly object to the introduction of evidence in order to preserve his objection for appellate review. See Sims v. State, 54 Fla. 100, 44 So. 737 (1907); Meade v. State, Fla. 1957, 96 So.2d 776 and Hearn v. State, Fla. 1951, 54 So.2d 651. By not making such specific objection at trial, he waived this objection to the introduction of the confession into evidence at trial.
Furthermore, it appears that there was other sufficient competent evidence, disregarding the confession, to sustain the finding of guilt and the error, if any, was at worst harmless. See Fla. Stat. § 924.33, F.S.A.; Coggins v. State, Fla.App. 1958, 101 So.2d 400.
The appellant next contends that the trial court erred in failing to give a cautionary instruction on how to consider and treat the confessions admitted into evidence. Examination of the record indicates that the Court did give a specific charge on the treatment to be given "any confession or admission by either of the defendants."
The appellant next objects to an instruction which indicated that the defendants must be given the benefit of any doubts and acquitted "unless the allegations contained in the indictment had been admitted."
The record reflects that there had been certain admissions made by the defendant concerning the proper identification of the deceased person. In addition, there was no objection made by the defendant, at the time of trial, to this instruction. This claimed error is without merit. See Fla. Stat. § 918.10(4), F.S.A.; Siekman v. State, Fla.App. 1967, 198 So.2d 352.
The appellant next claims that the Court committed fundamental error in instructing the jury that the defendant is not entitled to claim that such killing was accidental or self defense. The record reflects that the defendant's counsel asked for a change or modification of this instruction and that the same was granted and that the instruction was modified by the Court. The Court then asked the appellant's attorney if he had any objections to the charge and his attorney advised the Court that there was no objection. This claim for reversal is, therefore, denied. See Gibson v. State, Fla.App. 1967, 194 So.2d 19. We find no reversible error under the evidence submitted to the jury, in the charge which was given. Jefferson v. State, Fla. 1961, 128 So.2d 132; Fla. Stat. § 782.04, F.S.A. The appellant also claims reversible error in regard to the failure of the trial court to instruct the jury to disregard testimony of a witness and such other evidence as was admitted regarding conspiracy. This claim for reversal is denied. See Brown v. State, 130 Fla. 479, 178 So. 153 (1938). A defendant is entitled to a fair trial but not a perfect one. Lutwak v. United States, 344 U.S. 604, 619-620, 73 S.Ct. 481, 97 L.Ed. 593, 605 (1953); Hopt v. People of Utah, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708 (1887).
The court recognizes the fine work done by appellant's counsel who was court appointed solely for presenting this appeal and was not counsel for Simpson in prior proceedings.
For the above and foregoing reasons the judgment and sentence of the trial court herein considered be, and the same is hereby
Affirmed.
HENDRY, J., concurs in judgment.