UNITED STATES of America,
Plaintiff-Appellee,

v.

Roy DeBOSE, Jr., Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Matthew McINTOSH, Jr., Defendant-
Appellant.

Nos. 19012, 19013.

United States Court of Appeals
Sixth Circuit.

June 11, 1969.

Thomas A. Buford (court appointed), Memphis, Tenn., for appellant DeBose, Jr.

Louis R. Lucas (court appointed), Ratner, Sugarmon, Lucas & Willis, Memphis, Tenn., for appellant McIntosh.

Thomas F. Turley, Jr., Memphis, Tenn., for appellee, Thomas L. Robinson, U. S. Atty., William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., on the brief.

Before WEICK, Chief Judge, COMBS, Circuit Judge, and GORDON, District Judge.*

COMBS, Circuit Judge.

Defendants, Roy DeBose and Matthew McIntosh, were charged with robbing a federally insured bank in violation of 18 U.S.C. § 2113(a). After a finding of guilty by a jury, DeBose was sentenced to eighteen years imprisonment and McIntosh to ten years. Both defendants appeal.

The Union Planters National Bank of Memphis, Tennessee was robbed by two men on May 22, 1967. The defendant DeBose was later identified by the teller and by a bank customer. A few minutes after the robbery, Lieutenant Felix of the Memphis Police Department observed a white Chevrolet with out-of-state license plates make a fast turn from a side street. Observing that the two occupants of the Chevrolet were unduly apprehensive, the officer suspected they were in a stolen car and kept them under surveillance. He apparently did not connect them with the bank robbery at that time.

The Chevrolet was driven into a driveway beside a rooming house and Lieutenant Felix stopped at the curb, intending to check its license plates against a list of "hot" cars. One of the occupants of the Chevrolet, later identified by Felix as DeBose, got out of the vehicle and fired two shots at the police car. Felix returned the fire and gave chase; the two men fled down an alley and disappeared over a fence. Felix returned to his automobile and called for assistance.

Several policemen soon arrived on the scene. A check of the abandoned car revealed $32,000 of the money stolen from the bank and inquiry disclosed that the car belonged to an occupant of the rooming house. A bystander reported that the men had entered the rooming house through a back door. Thereupon, the police undertook to search the house.

The search failed to turn up the suspects or any evidence of the robbery, but a search of a room later identified as McIntosh's revealed the suspects' identities.

Later on the same day, police went to the home of a Mrs. Leona Ramsey where the defendants reportedly had been seen after the robbery. A search of the Ramsey home, with Mrs. Ramsey's consent, and the questioning of two of the defendants' relatives [1] who were present disclosed that the defendants had changed clothes at the Ramsey house and had left sometime that afternoon. One of the witnesses also reported that she had seen McIntosh hand DeBose a gun as they were leaving.

Early the next day, DeBose was apprehended near Memphis. In the evening of the same day, McIntosh was arrested at the home of his parents in Choctaw County, Alabama by the county sheriff. The sheriff took McIntosh to the county jail in Butler, Alabama. He gave the defendant no warnings relative to his constitutional rights. Unaware that DeBose had already been arrested, the sheriff inquired of McIntosh as to DeBose's whereabouts. McIntosh at first gave no information, but later suggested several places DeBose might have gone and also made admissions which amounted to a confession of the robbery.

On May 24, two FBI agents arrived in Butler for the purpose of transporting McIntosh to Mobile. They were informed by the sheriff that McIntosh had confessed. McIntosh was then warned of his rights, and signed a standard FBI waiver form. However, the FBI agents told him they were not going to question him during the trip to Mobile, and that they did not want him to speak of the robbery. In spite of this admonition, McIntosh, in a remorseful and talkative mood, made another confession, substantially repeating what he had told the sheriff.

---

* Honorable James F. Gordon, United States District Judge for the Western District of Kentucky, sitting by designation.

1. DeBose and McIntosh are cousins and both are related to members of the Ramsey family.

Upon arrival in Mobile, McIntosh was promptly taken before a United States Commissioner where he waived preliminary hearing and signed another standard form of waiver. He was then interrogated by FBI agents and repeated his previous confession. The statement was committed to writing and signed by McIntosh.

At their joint trial, DeBose testified in his own behalf; McIntosh did not take the stand. McIntosh's written confession was introduced and this is assigned as error by both defendants. McIntosh contends that the confession was obtained in derogation of the safeguards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). DeBose contends that, since the confession implicated him and McIntosh did not testify, he was deprived of his Sixth Amendment right to confront an adverse witness. Reliance is placed on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), decided after this case was tried.

■ DeBose's contention cannot be refuted. He comes squarely within the rule of *Bruton*. Thus, reversal as to him on the strength of that case is required. Townsend v. Henderson, 405 F.2d 324 (6th Cir. 1969); Atwell v. United States, 398 F.2d 507 (5th Cir. 1968).

McIntosh argues that his original confession to the sheriff was inadmissible because it was obtained without observance of the *Miranda* safeguards and that this inadmissible statement tainted the subsequent confessions, much as a confrontation with illegally seized evidence will taint subsequent confessions. See Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). But, we do not reach that question here. The district court found and we agree that the statement to the sheriff was not inadmissible under *Miranda*.

■ It was not necessary for the sheriff to give the *Miranda* warnings because there was no interrogation within the *Miranda* rule. The Court summarized its holding in *Miranda* as follows:

"[W]e hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way *and is subjected to questioning* the privilege against self-incrimination is jeopardized." (Emphasis added.) 384 U.S. at 478, 86 S.Ct. at 1630.

Later cases have pointed out that the rule applies only when there is interrogation. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969); Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968).

■ McIntosh's statement to the sheriff in regard to the robbery was volunteered and *Miranda* does not eliminate the volunteered confession rendered in the absence of interrogation. Although inquiry was made as to DeBose's whereabouts, McIntosh was not interrogated with regard to the bank robbery. If a suspect wants to talk, his custodians are not required to feign deafness. The *Miranda* rule is a sound one but it should not be applied to the point of absurdity. McIntosh's confession was properly admitted against him.

■■ Other assignments of error by McIntosh concern the search of the rooming house where he lived and the Government's questioning of a witness as hostile. It is admitted that nothing seized in the search was used as evidence. McIntosh contends, however, that the fruits of the search led to other evidence. The "fruits" of this allegedly illegal search are not described either in the record or in briefs. This is of little concern since we do not consider the search to have been illegal. After being informed that the suspects had entered the house, the police entered upon the premises in "hot pursuit" to search for the suspects or their weapons. Such a search is permissible. It was said in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), at 298–299: "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely

endanger their lives or the lives of others." Here the police entered the house in pursuit of two individuals who only minutes before had attempted to kill a police officer. The search was authorized under the rule of *Hayden*. We find no error on this score.

■ The contention with regard to the Government's questioning of a witness as hostile is similarly without merit. This witness was related to the defendants and was present in the Ramsey home where the defendants changed clothes. She gave a story on the witness stand different from that she had previously told the prosecutor. Under such circumstances, the court did not abuse its discretion in permitting the questioning of this individual as a hostile witness. See United States v. Durham, 319 F.2d 590 (4th Cir. 1963); Illinois Terminal R. R. v. Friedman, 210 F.2d 229 (8th Cir. 1954).

The judgment against the defendant McIntosh is affirmed. The judgment against the defendant DeBose is reversed and the case is remanded for further proceedings consistent with this opinion.