Clarence SIMPSON, Jr., Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.

No. 29109.

United States Court of Appeals, Fifth Circuit

March 12, 1971.

Rehearing Denied April 6, 1971.

Gewin, Circuit Judge, concurred specially and filed opinion.

Clarence Simpson, Jr., pro se., Stanley Jay Bartel, Miami, Fla., for petitioner-appellant.

Earl Faircloth, Atty. Gen. of Florida, Tallahassee, Fla., Jesse J. McCrary, Jr., Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before GEWIN, COLEMAN, and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge.

In 1962, Clarence Simpson was convicted by a jury in the Circuit Court of Dade County, Florida, of the crime of first degree murder. It was not until 1968 that the Supreme Court decided Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. On habeas corpus to the United States District Court for the Southern District of Florida, Simpson alleged that he was entitled to *Bruton* relief. The District Court held that the *Bruton* infractions revealed by the state trial transcript were harmless beyond a reasonable doubt. Because Simpson was identified on the witness stand by an eye witness to the homicide, because Simpson later identified the weapon as the one he used in the commission of the murder, and because he made a full and complete confession to the murder to at least two police officers, we affirm the District Court.

On March 6, 1962, the grand jury in and for Dade County, Florida, indicted Clarence Simpson jointly with Aubrey Henry, Joseph Millings, Jr., and Eugenia Thomas for the murder, on October 28, 1961, of one Beatrice Dunaway by shooting her with a pistol in the perpetration of robbery or in the attempt to perpetrate robbery.

On March 28, 1962, all defendants, represented by counsel, were arraigned and stood mute. They were jointly tried in the Dade Circuit Court. Millings and Thomas were acquitted on *directed verdicts*. Simpson and Henry were convicted with recommendations of mercy, resulting in life sentences.

Simpson did not appeal. On a writ of habeas corpus he was later allowed an appeal out of time; see Wainwright v. Simpson, 5 Cir., 1966, 360 F.2d 307. The Florida District Court of Appeal affirmed the original judgment of conviction, Simpson v. State, 211 So.2d 862 (1968). The Supreme Court of Florida dismissed Simpson's appeal without opinion, 225 So.2d 908 (1969).

Simpson filed a *new* petition for habeas corpus in the United States District Court. October 16, 1969, as already stated, that Court denied relief and the case is again here on appeal.

Simpson asserted only two grounds for relief: (1) that an unsigned confession by Simpson was admitted into evidence in violation of his Fifth Amendment rights against self incrimination, and (2) that statements of Simpson's co-defendants were admitted into evidence in violation of the principles enunciated by Bruton v. United States, *supra*.

The contentions as to the admission of the confession are clearly without merit and will be dismissed without further discussion.

■ We proceed to a consideration of the *Bruton* contentions. *Bruton* was decided May 20, 1968. Simpson had been tried in 1962, but *Bruton* is to be given retroactive effect as to both state and

federal prosecutions, Roberts v. Russell, 1968, 392 U.S. 293, 88 S.Ct. 1921, 20 L. Ed.2d 1100. In denying habeas corpus relief, the District Court held that although the statements of the co-defendants were violative of *Bruton* principles the case against Simpson was so overwhelming as to justify the harmless error rule of Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284 and Posey v. United States, 5 Cir., 1969, 416 F.2d 545, Snowden v. United States, cert. denied 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127. The Court was further of the opinion that the case presented a situation much like that in United States v. Venere, 5 Cir., 1969, 416 F.2d 144.

Bruton v. United States, *supra*, was a federal prosecution for armed postal robbery. When the case came to the Supreme Court the Solicitor General submitted a memorandum stating that "in the light of the record in this particular case and in the interests of justice, the judgment below should be reversed and the cause remanded for a new trial".

The confession of Bruton's co-defendant, used against Bruton, was held on appeal to have been wrongly admitted and his conviction was reversed. Upon a new trial he was acquitted. The Supreme Court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extra-judicial statement in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment".

We have before us the transcript of Simpson's jury trial in 1962.

The State made out a case of first degree murder by the eye witness testimony of one Catherine Wilson. She swore that Simpson and another man, both armed, forcibly entered a certain house, after which Simpson struck another individual present and told him, "this is a stickup". That individual was required to hand over his money and to lie on the floor. Beatrice Dunaway then came to the house. Simpson let Dunaway in the door and struck her, whereupon she returned the blow, and Simpson shot her dead.

Another witness testified that on the morning of the robbery he had sold Simpson a loaded pistol for $2.00 (a cheap weapon, but a deadly one). Later, this weapon was exhibited to Simpson in jail and he voluntarily identified it as the one he used on the occasion in question.

A civilian, Robert Hall, (p. 432, Trial Transcript) was allowed to testify over objection that Aubrey Henry, the co-defendant who was also convicted, told him in jail on the day before Thanksgiving that Clarence Simpson did the shooting. This jailhouse statement was taped by police officers with *Hall's* knowledge and consent.

Warren Holmes was a detective for the police department of the City of Miami. He testified, over objection, that on November 22, 1961, after conferring with his attorney, the same co-defendant Aubrey Henry stated that Clarence Simpson "was the one that committed this robbery-murder with him".

▪ After a finding of voluntariness by the trial court, Officer Holmes testified that on the next day he took Clarence Simpson to his office, "told him of his constitutional rights" and "I told him that Aubrey Henry had involved him in this and there was no doubt in our mind that he was the one who actually committed this holdup and shot Beatrice Dunaway", then he said, "well I will tell you about it because I was going to give myself up anyway. I was just waiting for Christmas". "So he came right out and told us the whole story about it. He was very cooperative". According to the testimony of Officer Holmes, Simpson proceeded to admit that on the morning of the murder he met Aubrey Henry and Joe Millings, Jr., they were all drinking, and one of them asked him if he had a gun and he said that he could get a gun. So, he

went and got a gun. In the meantime, Millings had a shotgun. That when they got to the house in question, he, Simpson, announced that this was a holdup and made those present lie on the floor. That Gus Hogan then came in, they told him to lie on the floor, and took his money. Simpson further stated that when the deceased, Beatrice Dunaway, came in, he instructed her to sit down, that this was a holdup, that after seeing that they were not getting any money, he decided to leave, and as he was walking out, he tripped and the gun went off, that he was not aware that he had shot and killed Beatrice Dunaway, but ran out the back door, jumped the backyard fence and made his escape. Simpson's version that the killing was accidental did not exonerate him because it took place during the commission of another felony.

This verbal confession was afterwards reduced to writing in question and answer form by a stenographer but Simpson did not sign it.

Another police officer, Detective Robert John Utes (p. 745, Trial Transcript) testified to a written statement by the co-defendant Aubrey Henry, which was admitted into evidence as State's Exhibit Number 6. Henry described the robbery as heretofore described, but claimed that he did not at the time know his companion in crime, the robber and the killer, and said that he ran out the back door, hearing a shot fired just as he got outside, whereupon his then unknown companion, later identified as Simpson, joined him and they left over the backyard fence.

Utes then testified to the confession given by Simpson, already described by Holmes.

The State was next permitted to introduce an out of court statement given by co-defendant Eugenia Thomas, placing Simpson in her home with a gun in his jacket immediately prior to the robbery-murder, as well as her statement quoting Joseph Millings, Jr., another co-defendant, to the effect that Simpson did the shooting.

Detective Utes being recalled, testified on further cross examination that upon a face to face confrontation Gus Hogan (the first man robbed) stated that Aubrey Henry, *and not Simpson,* was the man who fired the fatal shot. Hogan testified at the trial that he knew Henry was the man who hit him in the eye with a pistol and robbed him of $170 but he could not identify Simpson and did not see the shot fired, as he was lying face down with his eyes closed.

The state trial court, in keeping with the law of Florida as it existed at that time, during the course of the trial and at its conclusion, carefully instructed the jury that the statements of these co-defendants were admissible as against them only and were not to be considered against Simpson.

It is correct that this Court in Posey v. United States, 1969, 416 F.2d 545 at 551, held that where the evidence against a co-defendant is cumulative and, apart from it, the case is *overwhelming* (emphasis added) any error in the admission of a co-defendant's confession in a *Bruton* situation is harmless.

The *Bruton* principle must be applied on a case-to-case basis "with practicality and common sense". Davis v. Sigler, 8 Cir., 1969, 415 F.2d 1159, 1163 [opinion by J. Blackmun]. In that case, the Court set aside the conviction, even though the defendant himself confessed, as did Simpson in the case now before us. However, Davis was accused only as the driver of the get away car and there was no eye witness, subject to cross examination, who stated that Davis knew that his companions were going to rob the bar or that he went there for the purpose of driving the get away car. He was not in the bar when the robbery took place.

In Atwell v. United States, 5 Cir., 1968, 398 F.2d 507, 510, we applied the *Bruton* standard as requiring a reveral if the introduction of a confessor's statement implicates a co-defendant and

adds substantial, perhaps even critical, weight to the Government's case in a form not subject to cross examination when the confessing co-defendant does not take the stand. To like effect see United States v. DeBose, 6 Cir., 1969, 410 F.2d 1273, and Green v. United States, 10 Cir., 1969, 411 F.2d 588.

*Atwell* was a federal case, on direct appeal. He had been convicted of the theft of federal property. His car was used to transport the stolen goods and he drove the car. One of his companions admitted the theft of the wire and implicated Atwell. However, this was all that actually implicated him in the taking of the goods. We reversed the conviction.

In 1969, the Sixth Circuit decided United States v. Clayton, 418 F.2d 1274, in which the Court held that "the rule of *Bruton* is not absolute", citing the harmless constitutional error rule promulgated in Chapman v. California, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705, 24 A.L.R.3d 1065, as well as Harrington v. California, *supra*. Clayton was positively identified by three bank tellers as being one of those who robbed a bank. The Court said, "The evidence of Clayton's guilt was therefore clear and convincing and was not 'woven from circumstantial evidence'." It was therefore held that the admission of a confession given by one of Clayton's co-defendants, who did not take the stand and was not cross examined, was harmless error, the jury having been properly instructed.

In Harrington v. California, *supra*, the Supreme Court held that its judgment as to whether the denial of a constitutional right to a state defendant was harmless error must be based on the Court's own reading of the record and its assessment of the probable impact of the admission of confessions by non-testifying co-defendants on minds of an average jury.

We have read this record, as the above excerpts indicate, and, to the best of our ability we apply the *Bruton* rule *with*

*practicality* and *common sense*, Davis v. Sigler, *supra*.

In Fahy v. State of Connecticut, 1963, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, the Supreme Court held that harmless error may be measured by whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

■ In our case presently under consideration, one eyewitness identified Simpson as the man who fired the fatal shot. Simpson identified the death weapon when it was found and exhibited to him. In the presence of at least two officers, Simpson voluntarily confessed the homicide, although he attempted to excuse it as an accident, which was no defense under the circumstances. More than this, it is virtually, if not altogether, undisputed that Aubrey Henry and Simpson went to the house, armed with deadly weapons, and there committed a robbery, a felony under Florida law. From the testimony of those at the scene, it is evident beyond a reasonable doubt that either Simpson or Henry had to be the individual who shot and killed Beatrice Dunaway. Since it happened while both were engaged in the commission of a felony, both were equally guilty as principals, see Henderson v. State, 70 So.2d 358 (Fla., 1954); Smith v. State, 129 Fla. 388, 176 So. 506 (1937); Milligan v. State, 109 Fla. 219, 147 So. 260 (1933).

The test laid down in *Bruton* is whether there is a substantial risk that the jury despite instructions to the contrary, looked to the incriminating extra-judicial statement in determining petitioner's guilt.

■ We are of the opinion that under the facts and circumstances of this case there was no necessity for the jury to have looked to the extra-judicial statements. The guilt of the defendant was overwhelmingly established by other testimony. Applying the test of Fahy v. Connecticut, *supra*, there was no reasonable possibility that the jury would have acquitted Simpson had the extra-judicial

statements of the co-defendants not been admitted.

The judgment of the District Court, therefore, is

Affirmed.

GEWIN, Circuit Judge (concurring specially):

I fully concur in the opinion of Judge Coleman. In addition to the authorities cited by him, I believe the conclusion reached is also supported by the teachings of the recent decision in Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L. Ed.2d 213 (1970).