Donald Henry DAVIS, Appellant,

v.

Maurice SIGLER, Warden, Appellee.

No. 19319.

United States Court of Appeals
Eighth Circuit.

Sept. 16, 1969.

---

4. One of petitioner's counsel suggested that there *may* have been a recorded tape of the proceedings.

**1160**

Paul F. Festerson, Omaha, Neb., for appellant.

Melvin Kent Kammerlohr, Asst. Atty. Gen., State of Nebraska, Lincoln, Neb., for appellee, Clarence A. H. Meyer, Atty. Gen., State of Nebraska, Lincoln, Neb., on the brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

BLACKMUN, Circuit Judge.

Donald Henry Davis, born January 15, 1948, and now a Nebraska State prisoner, appeals in forma pauperis from the denial of his application for a writ of habeas corpus. The certificate of probable cause, required by 28 U.S.C. § 2253, was issued by the district court.

Davis, on his plea of not guilty in the District Court for Douglas County, Nebraska, was convicted by a jury in 1965 of murder in the first degree (killing in the perpetration of a robbery). Neb. R.R.S. 1943 § 28-401 (1964). He received a life sentence. On appeal the judgment of conviction was affirmed. State v. Davis, 180 Neb. 830, 146 N.W.2d 220 (1966). Certiorari was denied. Erving v. Nebraska, 386 U.S. 998, 87 S.Ct. 1320, 18 L.Ed.2d 348 (1967).

The homicide and Davis' presence in an automobile near the scene of the crime are not in controversy.

In the federal proceeding, the state trial bill of exceptions (transcript) was introduced in evidence and the parties entered into a "Stipulation of Uncontroverted Facts." Some of the facts are stated in the opinion of the Nebraska Supreme Court and in that court's opinion in the companion appeal. State v. Erving, 180 Neb. 824, 146 N.W.2d 216 (1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1320, 18 L.Ed.2d 348 (1967).

An Omaha bar was robbed shortly after 9 p. m. on August 18, 1964. In the course of the robbery the bartender was shot. He soon died of the wound he had received. Three blacks, Jerry Erving, Jr., Deborah Boston, and Nathaniel Hall, were present in the bar at the time and fled with money taken from the cash register and with bottles of liquor. Hall carried the gun and shot the bartender. Davis, also a black, was the driver of the car by which Erving, Deborah, and Hall had arrived at the bar.

The automobile was parked outside the bar and pulled away just after the crime. The car was seen and was described to the police. An officer in a car passed it, attempted to follow it, and soon found it empty but with its lights on. In the automobile were a bottle of whisky bearing a marking used at the bar and a

bandanna or scarf similar to that worn by one of the participants in the robbery. The registration found in the automobile identified the car as belonging to Davis' father.

Officers went to the address listed in the registration. Inquiry there led them to the home of Davis' girl where, about 10 p. m., Davis was found. He was arrested and taken to the police station.

Upon arrival at the station Davis was interrogated, placed in a line-up, and booked. He was not turned over to the juvenile authorities. The next morning he was further questioned by two colored detectives. Davis' mother went to the station that day but her request to see her son was refused. His father and uncle also were unsuccessful in getting to see him. The officers questioned Davis further that evening. One of them typed a summary of that interrogation. In this interview Davis admitted his involvement in the crime.

At 12:30 a. m. on August 20 a deputy county attorney and one of the detectives again questioned Davis. This was recorded by a court reporter. Davis once more confessed. His mother was allowed to see him on August 20 after the statement had been recorded and after he had been removed from the station to the county jail.

Hall, Erving, Deborah, and Davis were charged with murder. Hall pleaded guilty. The others pleaded not guilty. On motion of the state the three cases were consolidated for trial pursuant to Neb. R.R.S. 1943 § 29–2002 (1964). Timely objections to the consolidation were made by all three and their respective motions for severance were denied. Each defendant had his own lawyer. Davis' counsel was retained.

The trial resulted in an acquittal for Deborah and in convictions for Davis and Erving.

■ In the warden's response to the district court's order to show cause, it was suggested that Davis had failed to exhaust his state remedies because he had not utilized the Nebraska post-con-

viction procedure provided by Laws 1965, c. 145, now Neb. R.R.S.1943 §§ 29–3001 to 29–3004 (Supp.1967). See Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). We are satisfied, however, as was the district judge, that the issues raised in the federal habeas proceeding are substantially identical with issues raised on Davis' direct appeal from his conviction; that the Nebraska court would rule that it has already passed upon them; and that state remedies have been sufficiently exhausted so as to satisfy the requirements of 28 U.S.C. § 2254(b). See Kennedy v. Sigler, 397 F.2d 556, 559 (8 Cir.1968); State v. Hizel, 181 Neb. 680, 150 N.W.2d 217, 219 (1967), cert. denied, 389 U.S. 868, 88 S.Ct. 143, 19 L.Ed.2d 145; State v. Newman, 181 Neb. 588, 150 N.W.2d 113, 114 (1967); State v. Parker, 180 Neb. 707, 144 N.W.2d 525, 529 (1966).

On this appeal Davis asserts the absence of probable cause for his arrest. He also claims that at the joint trial his federal constitutional rights were violated by the receipt (a) of evidence of his confessions and (b) of evidence admissible only against a codefendant, including, in particular, statements which incriminated or tended to incriminate Davis.

We turn at once to the last issue.

The challenged evidence consisted of the testimony of three witnesses (Gray Smith; his wife, Margaret Smith; and Hightree) as to events which took place inside the bar that night; state exhibits 1–6 inclusive, consisting of five photographs of the inside of the bar and one photograph of its exterior; the testimony of witness Dee as to his finding an empty .22 caliber shell casing on the bar's floor; state exhibit 7, the casing; state exhibit 9, the bandanna found in the Davis automobile; the testimony of Detective Sergeant Foxall concerning the oral confessions of Deborah and Erving; the testimony of witness Fitch as to the deposition of the court reporter who took the statement from Deborah; and Deborah's statement which was the exhibit attached to that deposition.

Deborah's oral statement, according to Foxall, referred to a driver of the automobile. She did not name the driver or otherwise identify him as Davis. She spoke of her friend Erving and of his coming up to her "in an automobile with another man driving, and another man * * * in the back seat, all colored." She joined them. She did not know the other two men. There "was some talk amongst the men in the car about holding up the place * * *." After the shooting at the bar she and Erving returned to the parked automobile "and the driver drove west * * *." They came across Hall and picked him up. They stopped "and they were in the process of counting the money and splitting up same between the men only."

Erving's oral statement, according to Foxall, included comments that Davis and Hall came to Erving's home the evening of August 17 in Davis' automobile. The three drove around a bit. Hall and Davis came by again early the next evening. They drove around. They saw Deborah on the street and she got into the car. Eventually, they parked near the bar and looked inside. Erving and Deborah entered. When Erving and Deborah left the bar after the shooting, "they got into the automobile, aroused Donald Davis, who was relaxing behind the wheel, told him that [Hall] had shot the bartender and drove around * * *", picked up Hall, and went to what Erving believed was Davis' home "where they counted the money by dumping this all on the floor of the automobile."

Witness Fitch was a court reporter. He testified that on May 1, 1965, he took a deposition from Mrs. Mary Kay Wain, another reporter; that Mrs. Wain was to have surgery and would be unavailable at the time of the trial; and that Mrs. Wain testified that on August 20, 1964, she took a statement from Deborah and prepared a transcript from her notes.

Deborah's statement before the court reporter recited: She was born in August 1948 in Little Rock, Arkansas. On the night of August 18 Erving came by in an automobile. She got in. There were two others in the car beside Erving. She did not know their names. There was talk about robbing the bar. The "three boys were talking about it together." She and Erving entered the bar. The other man followed. After the shooting, the one with the gun went out first. Then she and Erving left. The two returned to the car. The driver was still there. They drove around the corner and picked up the other man.

At the trial Davis took the stand in his own behalf. Erving and Deborah did not. Davis testified that he and Erving and Hall had been drinking that night; that nothing was said about robbing the bar; that he was so drunk that he fell asleep while they were parked before the bar; that he did not see Hall get out; that the next thing he remembered was Erving and Deborah's getting back into the car and telling him, "Man, let's get on away from here"; that Erving had to shake him to wake him; that they encountered Hall on the way; that Hall still had the gun; that they went to Erving's home; that he, Davis, was sick and threw up; that, when the others came out of the house, they returned to him two or three dollars he had advanced to them; that he started to drive Hall home because he, Davis, had to take his mother to work; that a police car passed them and Hall jumped out; that Davis had no driver's license and was drunk and all he could think of was getting out, too; that he did get out and started running; that he never planned to rob the bar; that he was never inside it; that he stopped there to let Erving go in and get beer and whisky; and that he gave him money to do this.

■ The trial record reveals that appropriate and timely objections were made on behalf of Davis to the introduction of all the material which tended to implicate him. It also reveals that, with two minor exceptions, the court repeatedly and specifically instructed the jury that the evidence objected to was not admissible against Davis. The court failed so to instruct only when the shell casing and the bandanna were intro-

duced. This was an obvious oversight and is of no significance, in any event, in view of the repeated and consistent admonitions which were given.

On March 4, 1968, the district court, in ruling upon the issue, held that it was "governed by the rationale of Delli Paoli v. United States, 352 U.S. 232 [77 S.Ct. 294, 1 L.Ed.2d 278] (1957)" and that the state trial court did not deprive Davis of any federal constitutional right when it refused to sever his trial or to exclude the references to Davis from the statements of his codefendants.

*Delli Paoli*, although a 5 to 4 decision, was a controlling precedent at the time the district court denied Davis' application for federal habeas. The court's ruling, therefore, was then fully justified.

But two and one-half months later *Delli Paoli* was overruled by Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The principle enunciated in *Bruton* is that the admission, in a joint trial, of a codefendant's confession implicating the defendant in the crime may be violative of the defendant's right of cross-examination guaranteed by the Confrontation Clause of the sixth amendment, despite any instruction by the trial court that the jury disregard the confession in determining the defendant's guilt or innocence. The Supreme Court stressed the "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt" and the "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant". 391 U.S. at 126 and at 135–136, 88 S.Ct. at 1622 & 1628.

In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the Court held that *Bruton* is to be applied retroactively and to both state and federal prosecutions. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), were cited in support of the application of the Confrontation Clause to the states by the fourteenth amendment.

We must therefore decide whether *Bruton* and *Roberts*, both handed down after the district court's decision in this case, compel a reversal of that ruling. *Bruton*, by its emphasis on "substantial risk" and "powerfully incriminating extrajudicial statements of a codefendant," does not rule out the possibility that, in proper circumstances, limiting instructions may be fully effective and may work to assure a defendant the fair trial to which he is entitled. Indeed, the Court specifically recognized this when it said:

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one' (citations omitted). It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information." 391 U.S. at 135, 88 S.Ct. at 1627.

This court has recognized this distinction and has held that the *Bruton* principle must be applied on a case-to-case basis "with practicality and common sense." Slawek v. United States, 413 F. 2d 957, 964 (8 Cir.1969); Caton v. United States, 407 F.2d 367, 372 (8 Cir.1969), cert. denied, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773. We apply this standard to the evidence received in the joint trial.

We are not very much concerned about the Smith-Hightree-Dee testimony as to the events which took place inside the bar that August evening, or about the photographs or the shell casing or the bandanna. There is no dispute that the shooting took place and that Hall, who fired the shot, was, both before and afterward, an invited passenger in Davis' automobile. Certain of these physical evidence items would be admissible anyway, if Davis had been separately tried, and the rest, at the most, would be irrelevant. None

bears upon the sixth amendment right of confrontation.

We are gravely concerned, however, with detective Foxall's testimony as to the respective oral confessions of Deborah and Erving, and with Deborah's written confession, all of which were introduced in evidence with instructions to the jury that they were not admissible against Davis. Davis did not have the right to cross-examine Erving and Deborah before the jury. Erving's statement implicated Davis by name and by action. It made him a part of the enterprise and a beneficiary of its loot. Deborah's statements, both oral and written, did not identify Davis by name, but she did enumerate three young colored men, including her friend Erving, as the occupants of the automobile, place in their mouths a conversation about holding up the bar, and say that the three divided the stolen money. Coupled with Erving's testimony, Deborah's identification is specific, complete, and corroborative.

Here, then, are the "powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant" and the "substantial risk that the jury, despite instructions to the contrary," will look to "the incriminating extrajudicial statements in determining * * * guilt", which the Supreme Court so stressed in its *Bruton* opinion. We cannot differentiate factually the statements of the Davis codefendants from that of Bruton's codefendant to the effect that he and Bruton committed the armed robbery with which they were charged. This situation is different from that of the general and nonidentifying details with which we were concerned in our *Caton* and *Slawek* cases cited above.

The respondent warden, however, argues that the facts of the present case are legally distinguishable from those of *Bruton* and *Roberts*. It is said that in neither of those cases did the defendant himself confess; that Deborah only referred to the "driver" of the car and was unable to give his name; and that

Erving's confession actually tended to exonerate Davis, rather than to implicate him, for it states that Erving and Deborah went into the bar not to rob but to buy, and it further states that, when they emerged, they had to arouse Davis, a fact not consistent with his being the driver of a get-away car. It is further said that both Erving and Deborah did take the stand but that Davis did not request or exercise the right to cross-examine either of them.

We are not persuaded by this argument. It is true that Davis' own statements were placed in evidence but their admissibility remains seriously at issue. We feel, too, that the Deborah-Erving testimony, in the aggregate, clearly identifies and implicates Davis and does not leave the driver unidentified or revealed as a person innocently sleeping, relaxed, and unconcerned. Deborah's and Erving's taking the stand is of no constitutional significance for this was done only for purposes of laying a foundation to the challenge to the confessions. They were on the stand outside the presence of the jury and Davis had no opportunity or right to confront or cross-examine them before the jury. This does not satisfy the sixth amendment right to confrontation. See Douglas v. Alabama, supra, 380 U.S. 415, 85 S.Ct. 1074.

We thus conclude that on the *Bruton* issue the district court's order denying relief must be reversed and the case remanded. Consequently, it is not necessary for us to pass upon the issues of probable cause for Davis' arrest and of the admissibility of Davis' own confessions. Nevertheless, in a desire to be as helpful as possible to the district court and to the state court, we venture the following observations:

■ 1. We have no difficulty with the issue of probable cause. The robbery of the bar, the shooting there, the presence of a two-toned Oldsmobile parked in front of the bar, and the automobile's departure immediately after the crime were reported to the police. Shortly thereafter a police car, with its officer-driver possessed of this information,

passed an automobile which fit the description. He followed it and came upon it empty but with its lights burning. He found in it the telltale whisky bottle, the bandanna, and the registration in the name of the senior Davis. Inquiry at the Davis home led officers within the hour to the son. He was found with his trousers damp and with currency on the floor beside his billfold. Certainly, all this adds up to probable cause and, in the light of recent cases, needs no further elucidation on our part. See Leffler v. United States, 409 F.2d 44, 48 (8 Cir. 1969); Jackson v. United States, 408 F. 2d 1165, 1170 (8 Cir.1969); Reed v. United States, 401 F.2d 756, 757, 758–761 (8 Cir.1968), cert. denied 394 U.S. 1021, 89 S.Ct. 1637, 23 L.Ed.2d 48; Theriault v. United States, 401 F.2d 79, 81–83 (8 Cir.1968), cert. denied, 393 U.S. 1100, 89 S.Ct. 898, 21 L.Ed.2d 792; Harris v. Stephens, 361 F.2d 888, 892–893 (8 Cir. 1966), cert. denied, 386 U.S. 964, 87 S.Ct. 1040, 18 L.Ed.2d 113; Schook v. United States, 337 F.2d 563, 565–566 (8 Cir. 1964); and cases cited in these several opinions.

2. We feel that we need not now, and indeed should not, pass upon the various factual and legal aspects of the issue as to the constitutionality of the admission of Davis' own confessory material. With Deborah acquitted, the trial situation has changed. Further, that aspect of the confession issue which concerns the Nebraska procedure's compliance with the standards enunciated in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), was recently ruled upon and clarified by Chief Judge Van Oosterhout's opinion in Parker v. Sigler, 413 F.2d 459 (1969). In the light of these developments, it is only right that the Nebraska courts have the first opportunity to rule upon the issue of voluntariness and to comply with procedural requirements which have now been established.

As is always the case, we have a natural reluctance to interfere with a state's judicial process. But *Bruton* and *Roberts* compel us to do so here.

Unless an extension is granted, as hereinbelow permitted, the State of Nebraska is given 90 days from the date of issuance of our mandate in which to have a retrial of Davis underway. If his new trial is not begun in an appropriate state court within those 90 days, the district court shall grant Davis' application for a writ of habeas corpus. The district court, however, upon appropriate showing, may allow a reasonable extension of time beyond the 90 days and thereby defer the issuance of the writ. If for any reason the State concludes not to retry Davis, we expect the prosecution promptly to advise the district court and the penitentiary authorities of that decision so that Davis' release may then be effected forthwith.

Reversed and remanded.