**UNITED STATES of America,
Appellee,**

v.

**Francis E. YOUNG, Appellant.**

**No. 18905.**

United States Court of Appeals,
Eighth Circuit.

March 3, 1970.

Before GIBSON, LAY and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

Francis E. Young, a St. Paul, Minnesota realtor, was convicted on four counts of marihuana violations. He was sentenced to five years imprisonment on Counts I, III and VII, and ten years on Count II, all of the counts to run concurrently.[1]

Young was tried jointly with codefendant William L. Miller, the other codefendant Kenneth B. Mahmood previously having pleaded guilty to the conspiracy count (Count VII). Undercover agents purchased marihuana from Young on December 6-7, 1966, and the sufficiency of the evidence is not questioned. Young claims Fifth Amendment immunity to all of the transactions charged in the indictment, and also claims error in the admission of certain alleged incriminatory extrajudicial statements of codefendant Miller in violation of the *Bruton* rule.

We will first consider Count II, the § 4744(a) (1) violation for acquiring marihuana without paying the transfer tax imposed by § 4741(a),[2] as the constitutionality of a conviction under § 4744(a)[3] appears to be governed by *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The Supreme Court ruled that Leary's §

Douglas W. Thomson, St. Paul, Minn., for appellant.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., on the brief.

---

1. Counts I and III of the indictment charged illegal transfer of marihuana not pursuant to a written order form in violation of 26 U.S.C. § 4742(a), the substantive acts occurring on December 6-7, 1966.

Count II was related to the transaction of December 6, and charged a transfer of marihuana without having paid the tax imposed by 26 U.S.C. § 4741(a) in violation of 26 U.S.C. § 4744(a) (1).

Count VII charged a conspiracy of Young, Kenneth B. Mahmood and William L. Miller to violate 26 U.S.C. § 4755(b), prohibiting interstate transportation of marihuana, in violation of the conspiracy statute, 18 U.S.C. § 371.

2. 26 U.S.C. § 4741(a):

"(a) Rate.—There shall be imposed upon all transfers of marihuana which are required by section 4742 to be carried out in pursuance of written order forms taxes at the following rates:

(1) Transfers to special taxpayers.— Upon each transfer to any person who has paid the special tax and registered under sections 4751 to 4753, inclusive, $1 per ounce of marihuana or fraction thereof.

(2) Transfers to others.—Upon each transfer to any person who has not paid the special tax and registered under sections 4751 to 4753, inclusive, $100 per ounce of marihuana or fraction thereof."

3. 26 U.S.C. § 4744(a):

"(a) Persons in general.—It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741(a)—

4744(a) (2) conviction, for transporting or concealing marihuana without complying with the transfer tax provisions of § 4741(a), violated Leary's Fifth Amendment privilege against self-incrimination in that one has a constitutional "right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act." *Id.* at 28, 89 S.Ct. at 1544.

■ The Government admits the applicability of *Leary* to § 4744(a) (1) and concedes that the conviction on Count II must be vacated. While *Leary* dealt solely with a § 4744(a) (2) violation, we think the invocation of the Fifth Amendment privilege against self-incrimination provides a full defense to conviction under § 4744(a) (1), since a person obviously would have to acquire the marihuana to knowingly transport or conceal it. For Young to have complied with the transfer tax provisions he would have had to obtain an order form and to pay the $100 per ounce tax on unregistered transferees, thereby identifying himself as a member of a "selective group inherently suspect of criminal activities" inasmuch as "those persons who might legally possess marihuana under state law [are] virtually certain either to be registered under § 4753 or to be exempt from the order form requirement." *Id.* at 18, 89 S. Ct. at 1538. Therefore, since these provisions create a "real and appreciable" hazard of incrimination, the rationale of *Leary* applies with equal force to a conviction under § 4744(a) (1) and the ten year sentence on Count II must be vacated.

■ Counts I and III charging illegal transfer of marihuana in violation of §

4742(a),[4] however, are not governed by the ruling in *Leary* and must stand. Our prior decision in Baker v. United States, 412 F.2d 1010 (8th Cir. 1969), holding that *Leary* did control and was applicable to a transferor charged with failing to secure the transferee's compliance with the order form requirements of § 4742(a) was overruled in Buie v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283 (1969). In *Buie*, the Supreme Court, in a 6-2 decision authored by Mr. Justice White, held that the Fifth Amendment privilege against self-incrimination was not available as a defense for selling marihuana without the written order forms required by § 4742 (a).

The Court in *Buie* concluded that "[t]here is no real and substantial possibility that the § 4742(a) order form requirement will in any way incriminate sellers for the simple reason that sellers will seldom, if ever, be confronted with an unregistered purchaser who is willing and able to secure the order form." *Id.* at 93, 90 S.Ct. at 287. The Court reasoned that it is most improbable that purchasers "would be willing to comply with the order form requirement even if their seller insisted on selling only pursuant to the form prescribed by law," because no rational prospective purchaser of marihuana would incriminate himself with federal and local authorities and pay the $100 per ounce tax in order to secure the order form, especially in view of the well-publicized *Leary* ruling "that the Fifth Amendment relieves unregistered buyers of any duty to pay the transfer tax and secure the incriminating order form." *Id.* at 92, 90 S.Ct. at 286.

---

(1) to acquire or otherwise obtain any marihuana without having paid such tax, or

(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained."

4. 26 U.S.C. § 4742(a):
"(a) General requirement.—It shall be unlawful for any person, whether or

not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

Furthermore, Justice White points out that the dilemma which confronts the buyer does not confront the seller, since the statute purports to make all purchases of marihuana legal from the viewpoint of the buyer at his option, but in avoiding the federal penalty the buyer is forced to incriminate himself under state laws. In the seller's case a refusal by the buyer to secure the order form forecloses the making of a legal sale under federal law and the seller is left with only the alternative of not selling at all or violating the law.

Count VII alleged a conspiracy to violate 26 U.S.C. § 4755(b),[5] which makes it unlawful for any person to transport marihuana within any area of the United States or its possessions, excepting seven categories of persons or groups, which include legitimate dealers and purchasers, physicians and other practitioners registered under § 4753 to prescribe or dispense the drug, common carriers or other persons who are engaged in transferring legitimate purchasers or possessors of the drug, and governmental officials acting within the scope of their official duties. The conspiracy count[6] charged transportation of marihuana from Chicago, Illinois to St. Paul, Minnesota on several occasions in December, 1966 with the effective period of conspiracy operating between December 1 and December 17, 1966. Mahmood admittedly transported marihuana from the Chicago area to the St. Paul area on December 17, 1966 and was met at the airport by Young.

Defendant Young equates the proscription of § 4755(b) with § 4744(a)(2) which was found constitutionally offensive in *Leary*. We do not think this necessarily follows. Section 4755(b) is a flat proscription against the interstate transportation of marihuana, but it is neither applicable to those persons who have registered and paid the special tax required by §§ 4751–4753 inclusive,[7] nor to certain other legitimate holders, dispensers or carriers as set forth in the statute.

In Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), the Supreme Court held that a conviction for possession of an unregistered firearm was in essence a conviction for failure to register, and that a conviction for failing to make such incriminating disclosures was unconstitutional in violation of the Fifth Amendment. *Haynes* therefore makes clear that our first task is to determine the "perimeter of the offense" made punishable by § 4755(b), that is, whether a conviction for violation of § 4755(b) is in fact a conviction for failure to register as required by 26 U.S.C. § 4753 and for failure to pay the special tax required by 26 U.S.C. § 4751. If the answer is in the affirmative, we must then determine whether compliance with §§ 4751–4753 would involve substantial hazards of incrimination in violation of the Fifth Amendment.[8]

---

5. 26 U.S.C. § 4755(b) in pertinent part—
   "(b) Transportation.—Except as otherwise provided in this subsection, it shall be unlawful for any person to send, ship, carry, transport, or deliver any marihuana * * * from any State, Territory, the District of Columbia, or any insular possession of the United States into any other State, Territory, the District of Columbia, or insular possession of the United States."

6. 18 U.S.C. § 371 in pertinent part:
   "If two or more persons conspire either to commit any offense against the United States * * * and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

7. § 4751 imposes a tax, § 4752 deals with the mechanics of paying the tax and § 4753 requires any person subject to the tax imposed by § 4751 to register with the official in charge of the internal revenue district in which his place of business is located.

8. The above analysis was articulated by the 1st Circuit in United States v. Castro, 413 F.2d 891, 893 (1st Cir. 1969), which held that a conviction under 26 U.S.C. § 4704(a) for purchasing cocaine not in the original stamped package did not violate the defendant's privilege against self-incrimination, notwithstanding his claim

■ Section 4755(b) is independent of registration § 4753, which, as but one of seven exceptions to the proscription, does not control the entire thrust of the proscribed activity. Section 4755 in no way requires registration. "In fact, there is strong support in the legislative history for the proposition that illicit consumers of marihuana * * * are not entitled to register." Leary v. United States, 395 U.S. at 24 n. 38, 89 S.Ct. at 1541. That the registration provisions contemplate only those involved in legitimate activity in marihuana is shown conclusively by 26 C.F.R. § 151.24 (1969), which requires an applicant to show that he is legally qualified or lawfully entitled to engage in dealing in or dispensing marihuana under the laws of the jurisdiction in which he is operating or proposes to operate. Since defendant Young was not entitled to register, he could not be incriminated by a disclosure obligation which did not apply to him. United States v. Castro, 413 F.2d 891, 893 (1st Cir. 1969); Baughman v. United States, 301 F.Supp. 509, 512 (D.Minn.1969). The fact that compliance with §§ 4751–4753 is a defense to a § 4755(b) prosecution is of no consequence since it was impossible for Young to comply with §§ 4751–4753. *Cf.* United States v. Castro, *supra* at 893–894.

■ Furthermore, even if it were found that a § 4755(b) conviction is really a conviction for failing to register and pay the special tax required by §§ 4751–4753 and that those involved in illicit marihuana activity could register, registration under § 4753 is not necessarily incriminating. There can be and are legitimate registrants, such as physicians, veterinarians, manufacturers of Cannabis sativa L. and fiber products thereof, research personnel, and certain importers, which distinguishes § 4753 from the constitutionally impermissible registration sections condemned in *Marchetti*,[9] *Grossos*,[10] and *Haynes*. The registration section on marihuana thus is not directed principally against an inherently suspect group as are the registration provisions of 26 U.S.C. §§ 5841–51, which require possessors of firearms (of a type used principally by persons engaged in unlawful activities) to register their possession, and 26 U.S.C. §§ 4401, 4411 and 4412, which require those engaged in gambling operations to register and pay a tax. Although we need not reach the question, we feel that the Fifth Amendment is not violated by the insubstantial hazards of incrimination posed by § 4753.

The dilemma which confronted the defendants in the *Marchetti, Grosso, Haynes* trilogy is not applicable to § 4755(b). Young, therefore, had no alternative other than to abide by the proscription of § 4755(b), for a willful violation of § 4755(b) does not give rise to Fifth Amendment protection for the transgression. Young is not charged here with failing to register or pay the special tax, but with conspiring to effect the interstate transportation of marihuana.[11] We therefore hold the convic-

that he could only establish his innocence by proof that he had satisfied the registration and occupational tax provisions of 26 U.S.C. § 4721–22, because the Narcotics Act permits registration only by those involved in legitimate narcotics activity and the defendant thus would not have been permitted to register even had he desired to do so.

9. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

10. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

11. Since § 4755(b) is an outright proscription against interstate transportation of marihuana and is not primarily designed to compel registration for the payment of tax by illegitimate dealers or users, the exceptions to the outright proscription need not be negated by the Government. If Young desired to rely on one of the exceptions to the § 4755(b) proscription, he had the burden of establishing the exception as an affirmative defense. McKelvey v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 67 L.Ed. 301 (1922); Edwards v. United States, 312 U.S. 473, 483, 61 S.Ct. 669, 85 L.Ed. 957 (1941); United States v. Rowlette, 397 F.2d 475, 479 (7th Cir. 1968).

tion under Count VII must stand as against Young's claim of Fifth Amendment protection.

The trial court over Young's objection admitted into evidence inculpatory statements made by codefendant Miller implicating Young. Miller denied the correctness of the written statement taken by narcotic agents and denied any oral statements relating to marihuana. The written statement related in part that Young called Miller advising him that Ken Mahmood had been arrested in St. Paul and that he (Young) felt that Miller should be warned. Frank J. Broyles, an agent of the Federal Bureau of Narcotics, testified to oral admissions made by Miller when Broyles, as an undercover agent, sought to purchase marihuana from Miller. Broyles testified that he had been telephonically introduced to Miller on January 12, 1967 through Mahmood, that he called a number at Waukegan, Illinois where a voice identified the speaker as Miller. An appointment was set up with Miller and the purchase of marihuana was discussed. During this conversation Miller mentioned that he had received telephone calls from a person he called Frank Young. Miller related that he had met Kenny (Ken Mahmood), that Kenny had received a money order from one Frank Young, that he sold some marihuana to Kenny at that time, and that he had made a "grass" sale to Kenny by December 17. The trial court gave the general cautionary instruction that this evidence was not to be considered against defendant Young unless a conspiracy was proved.

Young claims a violation of the principle laid down in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), that where there is a "substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements" of a codefendant in determining the defendant's guilt or innocence, admission at a joint trial of

the condefendant's extrajudicial confession implicating the defendant violated the defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

*Bruton* stresses and was decided on the constitutional right to confrontation. The Court expressly repudiated the basic premise of Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), that it is reasonably possible for the jury to follow sufficiently clear instructions to disregard the confessor's extrajudicial statement that his codefendant participated with him in committing the crime. It is important to note that Bruton's codefendant Evans did not take the stand and that the other evidence against Bruton was not strong, according to the Solicitor General's memorandum (cited 391 U.S. at 125–126, 88 S.Ct. 1620 of the Court's opinion). Evans' extrajudicial confession that he and Bruton committed the armed robbery was obviously "powerfully incriminating." The Court concluded that the unreliability of such evidence was "intolerably compounded" when Evans did not take the stand and, as a consequence, was not subjected to cross-examination. The Court found that the "powerfully incriminating" nature of the extrajudicial statements coupled with the defendant's inability to confront and cross-examine the declarant created a substantial risk that the jury did look to the incriminating extrajudicial statements in determining Bruton's guilt, thereby necessitating reversal of Bruton's conviction.

We have had opportunity to apply the Bruton "substantial risk" test in Slawek v. United States, 413 F.2d 957, 960 (8th Cir. 1969) and in Davis v. Sigler, 415 F.2d 1159, 1163 (8th Cir. 1969). We felt that a "substantial risk" was created in *Davis,* where we reversed the conviction because the extrajudicial admissions were powerful and devastating thrusts at the defendant and because the defendant had no opportunity to cross-examine the declarants. Although the defendant had no opportunity to cross-

examine the declarant in *Slawek*, we upheld the conviction because we felt the admissions supplied only general and nonidentifying details and were merely duplicative of other evidence, whereas the "powerfully incriminating" statements in *Bruton* went to the very core of the defendant's guilt.

■ It is clear in the instant case that the statements made by Miller were inculpatory, as they set forth the fact that Young telephoned Miller, that Kenneth Mahmood received a money order from Young, and that Young was involved in a transaction with Mahmood and Miller in a scheme to transport marihuana from Illinois to Minnesota. However, Miller took the stand and was subjected to cross-examination by Young. Miller did not refuse to answer, instead he contended that his extrajudicial statement was a fabrication of the Government agents. There appears to be a split in the circuits as to whether a defendant's confrontation and cross-examination of his codefendant is sufficient to vitiate any violation of the defendant's Sixth Amendment rights due to the admission of the codefendant's extrajudicial incriminating statement. *Compare* Santoro v. United States, 402 F.2d 920 (9th Cir. 1968) and United States v. Boone, 401 F.2d 659, 663 n. 12 (3d Cir. 1968) with United States v. Guajardo-Melendez, 401 F.2d 35, 38–39 (7th Cir. 1968). We need not reach this question since all the facts contained in Miller's extrajudicial admission were proved by independent evidence and were testified to by his co-indictee Mahmood.

In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court held that the harmless error rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705 (1967), is applicable to *Bruton* violations. In interpreting the *Chapman* rule, *Harrington* concluded that *Bruton* violations may be held harmless if there is overwhelming untainted evidence to support the conviction.

The evidence of Young's guilt on all the charges is overwhelming and stands undisputed on the record. Mahmood testified that Young illegally purchased marihuana, sold it and conspired with Miller and Mahmood to transport the marihuana from the Chicago area to St. Paul, Minnesota.[12] The record shows that on December 17, 1966, the day the marihuana was allegedly transported from Illinois to Minnesota, Young took Mahmood to the airport and bought Mahmood's ticket to Chicago, and that upon Mahmood's return the same day, Miller met Mahmood, who was carrying a red bag containing marihuana, at the St. Paul airport. In addition, undercover agents testified to sales of marihuana made by Young on December 6 and 7 and the various telephone calls in the Young-Miller-Mahmood transaction were proved by written records. Since all of the transactions participated in by Young were proved without the need of supplying any missing links by Miller's extrajudicial statements, any *Bruton* violation which may have occurred is clearly harmless error under *Harrington* and *Chapman*. See Neal v. United States, 415 F.2d 599 (9th Cir. 1969) (harmless error found under *Harrington* even though extrajudicial confessor did not take the stand); United States v. Levinson, 405 F.2d 971, 988 (6th Cir. 1968). Miller's inculpatory statements were merely cumulative and duplicative of written records and other evidence testified to by the other parties who took part in the transaction.

For the reasons stated in the opinion, the conviction under Count II is vacated and the convictions under Counts I, III and VII are affirmed.

12. A Western Union money order of $450.-00 that Francis Young wired from St. Paul, Minnesota to Kenneth Mahmood at the Traveler's Motel in Waukegan, Illinois on December 4, 1966, was proved by the records of Western Union, and Young had a Western Union receipt for this money order on his person at the time of his arrest on December 17, 1966.