Jerome ERVING, Jr., Petitioner,

v.

Maurice H. SIGLER, Warden of Nebraska
Penal and Correctional Complex,
Respondent.

Civ. No. 1625 L.

United States District Court,
D. Nebraska.

April 13, 1971.

Thomas C. Emery, Omaha, Neb., for
petitioner.

Mel Kammerlohr, Asst. Atty. Gen., for
respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The petitioner, Jerome Erving, Jr., is
presently incarcerated in the Nebraska
Penal and Correctional Complex pursuant
to his May 20, 1965, conviction for mur-
der in the perpetration of a robbery.
Erving, together with two co-defendants,
was tried in the District Court of Doug-
las County, Nebraska, before a jury
which returned a verdict of guilty
against two of the defendants while ac-
quitting the third.

The petitioner's conviction was affirm-
ed on appeal to the Supreme Court of Ne-
braska, State v. Erving, 180 Neb. 824,
146 N.W.2d 216 (1966). In December,
1966, the petitioner filed an application
for writ of habeas corpus. However, the
petition was dismissed at the petitioner's
request and without prejudice pending
final resolution on an application for
writ of certiorari to the Supreme Court

of the United States. After the Supreme Court denied the petitioner's application, this court ordered that the petitioner's application for writ of habeas corpus be filed in forma pauperis in accordance with 28 U.S.C.A. § 1915.

On February 18, 1971, an evidentiary hearing was held before this court wherein the petitioner testified and presented the testimony of his mother, Katherine Erving. The respondent offered the state court bill of exceptions into evidence and it was received without objection by the petitioner. Subsequently, counsel for both parties submitted briefs. The case now is ready for decision.

## STATEMENT OF FACTS

On the evening of August 18, 1964, the Sip 'N-Chin Bar, a tavern located in Omaha, Nebraska, was robbed and the bartender was shot. Later, the bartender died of the wound inflicted during the robbery. Since the details of the robbery and shooting have already been set forth in Davis v. Sigler, 415 F.2d 1159 (C.A.8th Cir. 1969), State v. Davis, 180 Neb. 830, 146 N.W.2d 220 (1966), and State v. Erving, supra, there is no need for extensive exposition of the facts of the crime itself.

Attention needs to be turned to the sequence of events occurring after the robbery and shooting. The Omaha police arrested four persons, later identified as Nathaniel Hall (who apparently fired the fatal shot), Jerome Erving, Jr., Donald Henry Davis, and Deborah Boston. All were charged in the tavern robbery and murder.

The petitioner was arrested at his home in Omaha, Nebraska, on the morning of August 19, 1964, by Omaha police detective Pittmon Foxall. After the arrest Erving was taken to the Omaha Central Police Station where he was initially placed in a cell. After the elapse of about an hour Erving was taken to an interrogation room where he was questioned by Foxall. The interrogation terminated after about twenty minutes, when it appeared that the petitioner was uncooperative in answering questions. From

the interrogation room Erving was placed back in his cell about 1:00 or 2:00 p. m., where he remained until about 4:00 the same afternoon, when the police once again interrogated him. The petitioner was thereafter questioned approximately seven additional times by police officers during a nine-day period of incommunicado incarceration. Finally, on August 27, 1964, the petitioner made oral admissions to Foxall, which linked the petitioner to the robbery-murder. However, no written admission or confession was secured by the police from Erving.

The petitioner contends that he was held incommunicado from the time of his arrest on August 19, 1964, until his oral admissions made on August 27, 1964. To support that contention the petitioner's mother testified that at the time of her son's arrest she was at a hospital with a friend. After returning home about noon on the 19th of August she learned of her son's arrest and attempted to make contact with him by calling Lieutenant Wilson at the police station. Apparently, Wilson informed her that she would not be allowed to see her son. That same day she went to the police station to talk with her son but was told that she could not. The next day she returned once again to the police station in an effort to contact her son, only to find that her son was not permitted visitors.

The petitioner has raised five separate issues in his habeas corpus action:

1. Whether the admission into evidence of a statement obtained by the police during interrogations violated rights secured to the petitioner by the Sixth and Fourteenth Amendments;

2. Whether in the context of the "totality of the circumstances" the petitioner's statement was involuntary, whereby admitting it into evidence was violative of the due process clause of the Fourteenth Amendment;

3. Whether the procedure used by the trial court to ascertain voluntariness of the statement was violative

of the due process clause of the Fourteenth Amendment;

4. Whether the admission into evidence of the oral and written confessions of petitioner's co-defendants, which implicated him in the robbery and murder, was violative of the confrontation clause of the Sixth Amendment;

5. Assuming a violation of the confrontation clause, whether the violation was harmless error beyond a reasonable doubt.

## I.

## APPLICATION OF THE PER SE AND VOLUNTARINESS RULES

The principles of the landmark decision of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) are the touchstone for testing the conduct of the police in interrogation of the petitioner. If the trial court had found the facts of the interrogations to be as testified by the petitioner, the statement obtained by Foxall would have been *per se* inadmissible without any determination of voluntariness. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which according to Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) applies only prospectively, is inapplicable as far as prescribing a *per se* exclusionary rule to the questioned statement.

Assuming for a moment that the precepts of *Escobedo* were not violated during the police interrogation of the petitioner, the trial court, applying the "totality of the circumstances" [1] test, could have excluded the statement as secured in violation of the due process clause of the Fourteenth Amendment. Therefore, a bifurcated test must be implemented to ascertain the constitutional infringements alleged by the petitioner. First,

the statement must be measured against the *per se* inadmissibility test predicated on constitutional rights protected by the Sixth and Fourteenth Amendments. Second, the statement must be tested for voluntariness.

However, before applying these tests a preliminary determination concerning the procedural device used by the state court to ascertain admissibility and voluntariness must be examined in light of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In Davis v. Sigler, Civ. 1171 L (unreported memorandum D.Neb.1968) Judge Van Pelt had occasion to adjudicate many of the issues presently raised in this case which under the doctrine of stare decisis govern the decision to be reached herein. Judge Van Pelt in rejecting Davis', one of the petitioner's co-defendants, attack on the state's voluntariness procedure stated:

"Petitioner claims, however, that the trial court applied an incorrect rule of law in reaching its determination in that the court only considered the 'affirmative' evidence. According to petitioner, this was all the Nebraska law required at that time. In support of this contention, he cites Parker v. State, 164 Neb. 614, 620, 83 N.W.2d 347 and State v. Long, 179 Neb. 606, 616, 139 N.W.2d 813 (1966). The court in these cases does talk in terms of affirmative and negative evidence. However, just what is meant by these terms is not immediately clear. The petitioner contends in his brief that the rule means that the court can only consider evidence which is affirmatively stated and cannot consider evidence which is negatively stated such as that warnings were *not* given or the circumstances were *not* as claimed.

"It is obvious in this case, however, that the trial court did not apply the rule concerning negative evidence

---

1. See, e. g., Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); Hizel v. Sigler, 430 F.2d 1398 (C.A.8th Cir. 1970); Reizenstein v. Sigler, 428 F.2d 702 (C.A.8th Cir. 1970); Wilson v. Sigler, Civ. 1209 L (unreported memorandum D.Neb.1971).

which petitioner contends was the law at that time because petitioner claimed that he was offered promises of release of his brother and friends if he would cooperate. The State's evidence was negative in the sense that petitioner is urging in that they said that promises had not been made to petitioner. The court in this instance obviously sustained the position of the State. A similar argument can be made about the claimed threats which were made to the petitioner and which he claims infected his confessions.

"It could even be argued that the old rule concerning affirmative evidence was even more in favor of the accused, as it required a showing that the affirmative evidence excludes any other hypothesis than that the statements were voluntary. See *Parker, supra,* 164 Neb. at 619, 83 N.W.2d 347, *Long, supra,* 179 Neb. 618 [139 N.W. 2d 813].

"The state court (here) was very liberal in allowing petitioner to present all of his evidence at the hearing. As indicated in the Supreme Court's opinion, there is nothing to indicate that the trial court considered anything other than all of the evidence before it in reaching its decision. (State v. Erving, 180 Neb. 824, 146 N.W.2d 216 (1966) as incorporated in State v. Davis, *supra.*

"The court holds, therefore, that the trial court's determination was made on sufficient constitutional basis to entitle it to respect under Townsend v. Sain, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963), in those areas where the finding is specific enough to comport with the requirements of that case."

■ The petitioner, in this case, has offered no further reasons for contesting the voluntariness procedure than those offered in the *Davis* case. I therefore hold Judge Van Pelt's decision to be instructive and find the voluntariness procedure constitutionally acceptable.

After concluding the state procedure is constitutionally permissible, the next issue is what effect should the state hearing held by the trial court have on the factual issues confronting this court through petitioner's habeas corpus action. This precise issue was explicitly dealt with by Judge Van Pelt in *Davis* wherein the following observation was made:

"In Townsend v. Sain, 372 U.S. 293, 312 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963), the court said: 'In other words a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts.' We are also told:

'There cannot even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact tendered by the defendant. Thus, if no express findings of fact have been made by the state court, the District Court must initially determine whether the state court has impliedly found material facts. * * *

'If the state court has decided the merits of the claim but has made no express findings, it may still be possible for the District Court to reconstruct the findings of the state trier of fact, either because his view of the facts is plain from his opinion or because of other indicia.' (313, 314, [83 S.Ct. 745])

"Later in the opinion we read:

'Unless the district judge can be reasonably certain that the state trier would have granted relief if he had believed petitioner's allegations, he cannot be sure that the state trier in denying relief disbelieved these allegations. If any combination of the facts alleged would prove a violation of constitutional rights and the issue of law on those facts presents a difficult or novel problem for decision, any hypothesis as to the relevant factual determinations of the state trier in-

volves the purest speculation.' (315, [83 S.Ct. 745])

"See also the November 2, 1966 amendment to 28 U.S.C. § 2254, which provides that findings of fact adequately and properly made by the state court are to be presumed to be correct.

"Applying the statements to the facts presented here, it appears that the trial court only overruled the objection made in that court and did not make any specific findings of fact. (See State Court Record, p. 308, lines 12–17). This court must determine then, to what extent, if any, that ruling is accorded the presumption here.

\* \* \* "

It is contended that the petitioner's statement to Foxall should have been *per se* excluded from evidence because it was elicited in violation of *Escobedo*. The bill of exceptions of the voluntariness hearing indicates a highly contradictory account of whether Erving asked his interrogators for counsel, and specifically whether he requested the assistance of a particular lawyer but was refused. Foxall testified that he advised Erving of his right to counsel and that Erving did not request a lawyer. In contrast, Erving testified that he requested counsel on several occasions but was told that he would have to wait until "later on." I conclude, therefore, with reasonable certainty that the trial court would have sustained the petitioner's objection and excluded the oral admission from evidence if it had found the facts to be as testified to by the petitioner.

■ The petitioner's next contention is that his oral statement when viewed in the totality of the circumstances was involuntary and should have been excluded from evidence. The following factors are urged upon the court as supportive:

(1) the petitioner was not advised of his constitutional rights at the time of his arrest;

(2) the petitioner had requested an attorney during the first interrogation, and the request was denied;

(3) the petitioner was not informed of his right to remain silent at the time of his first interrogation;

(4) the petitioner was told by his interrogators that everyone else involved in the robbery and murder had confessed, including his girl friend, Deborah Boston, and that he might as well go along with their story;

(5) the petitioner was held incommunicado from the date of his arrest on August 19, 1964, until August 28, 1964, a period of nine days, during which time he was not allowed to see his mother or use the telephone;

(6) the petitioner was not fed during the initial stages of his incarceration;

(7) the interrogating officers threatened to have petitioner's mother removed from ADC, if he did not cooperate.

Considering these contentions, this court cannot say with reasonable certainty that it believes that the trial court would not have sustained the objection made by the petitioner if the trial court had found that the facts were as the petitioner contends in (1), (3), (5), (6) and (7). This conclusion is based primarily upon uncertainty of the case law which existed during the post-*Escobedo* but pre-*Miranda* period. However, it can be said with reasonable certainty that the trial court would have sustained the petitioner's objection if it found the facts to be as testified to in (2) and (4). Consequently, as to those contentions, I conclude that there exists adequate evidence to support a determination by the trial court that they did not exist, and no other reason having been shown why that determination should not be presumed correct, this court feels bound thereby and will consider these facts to be conclusively found against the petitioner. This court must determine for itself whether the remainder of the facts as claimed by the petitioner exist.

(1) The petitioner alleges that he was not advised of his constitutional rights at the time of his arrest. However, the petitioner did not make any admissions or

statements during that brief period of time from his arrest until his initial incarceration at the police station. Therefore, this contention is without merit.

(2) As noted above in the text of this opinion, the factual contention made by the petitioner in the subdivision was sufficiently disposed of by the trial court.

(3) The petitioner contends that Foxall did not inform him of the right to remain silent before commencing the first interrogation. The recurring problem of the conflicting version of what transpired behind the closed doors of the interrogation room is not new. See Davis v. North Carolina, 384 U.S. 737, 741, 86 S.Ct. 1761, 16 L.Ed.2d 895. Since secrecy shrouds the actual events, the court is left to resolve the enigma by reading the bill of exceptions of the trial court and considering the testimony of the petitioner in this court. After full consideration, but not without acknowledgment of the difficulty of this endeavor, I find that the petitioner has not met his burden of proof as to this contention.

(4) As noted in the text of this opinion, the factual contention made by the petitioner in this subdivision was sufficiently disposed of by the trial court.

(5) The petitioner's strongest contention arises from the lengthy incarceration and the intermittent interrogations which occurred during those nine days. Such conduct on the part of the police is not only abominable but inimical to the long traditions evolved in Anglo-American jurisprudence and should be inexorably condemned. Arguendo, the police could hold a suspect for such a period of time that any admissions made during the later stages of confinement would be rendered per se involuntary. However, this is not such a case. I find that during the course of the interrogations the police did not attempt to extract an admission by means of threats, promises or other coercive practices. Moreover, as set forth supra with respect to (1) and (2), it appears that the petitioner was apprised of his constitutional rights and was not obstructed in any effort to exercise those rights. In essence, if Erving was cut off during the nine-day period from the outside world, the blame does not fall on the police but upon his own failure to contact counsel when advised he had such a right. I conclude that the weight of the evidence indicates that the petitioner's incarceration was not of a nature that could be accurately described as incommunicado.

(6) The petitioner states for the first time before this court that he was not properly fed during the initial stages of his incarceration. The observation made by Judge Van Pelt in *Davis* is applicable here: "It is strange that this claim was not raised in the State court or in the pleadings in this case. In view of this, the court is unwilling to rest the granting of this writ on such a ground, when petitioner's story does not impress the court as correct." This allegation appears to be merely a construct of the fertile brain and without a counterpart in reality. United States ex rel. Holes v. Mancusi, 423 F.2d 1137 (C.A. 2nd Cir. 1970). The court finds, therefore, that the petitioner has not sustained his burden of showing that he was denied food during the period of his initial incarceration.

(7) Another contention raised for the first time before this court concerns the alleged threat made by the interrogating officers that petitioner's mother would be removed from the ADC rolls unless cooperation was forthcoming. For the same reasons set forth in part (6), I find the petitioner has not met his burden of proof as to this issue.

## II.

### THE BRUTON ISSUE

At the petitioner's trial the statements of both co-defendants, Deborah Boston and Donald Davis, were received into evidence over the objection of counsel. The statements consisted of both oral and written admissions which included numerous incriminating references to the petitioner's actions on the night of the

robbery and murder. Only Davis took the stand, thereby affording the petitioner an opportunity to cross-examine him in reference to the confession. Boston took the stand, but not in the presence of the jury, during the voluntariness hearing.

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) the Supreme Court of the United States confronted the constitutional problem involved when the confession of one codefendant, which implicates another, is introduced into evidence and is immune from attack because the defendant who made the confession decides not to testify at the trial. In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) the Supreme Court held the confrontation clause was secured to state defendants through the Fourteenth Amendment. In addition, in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) the Supreme Court held the application of Bruton to be retroactive.

The United States Court of Appeals for the Eighth Circuit held that Erving's co-defendant, Davis, was entitled to federal habeas corpus relief on the basis that his conviction was secured in violation of the principles enunciated in *Bruton* and its progeny. Judge Blackmun, speaking for the panel, stated:

> "The principle enunciated in *Bruton* is that the admission, in a joint trial, of a codefendant's confession implicating the defendant in the crime may be violative of the defendant's right of cross-examination guaranteed by the Confrontation Clause of the sixth amendment, despite any instruction by the trial court that the jury disregard the confession in determining the defendant's guilt or innocence. The Supreme Court stressed the 'substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt' and the 'powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant.' 391 U.S. at 126 and at 135–136, 88 S.Ct. 1620, at 1622 and 1628. (415 F.2d at page 1163)

> "The respondent warden, however, argues that the facts of the present case are legally distinguishable from those of *Bruton* and *Roberts*. It is said that in neither of those cases did the defendant himself confess; that Deborah only referred to the 'driver' of the car and was unable to give his name; and that Erving's confession actually tended to exonerate Davis, rather than to implicate him for it states that Erving and Deborah went into the bar not to rob but to buy, and it further states that, when they emerged, they had to arouse Davis, a fact not consistent with his being the driver of a get-away car. It is further said that both Erving and Deborah did take the stand but that Davis did not request or exercise the right to cross-examine either of them.

> "We are not persuaded by this argument. It is true that Davis' own statements were placed in evidence but their admissibility remains seriously at issue. We feel, too, that the Deborah-Erving testimony, in the aggregate, clearly identifies and implicates Davis and does not leave the driver unidentified or revealed as a person innocently sleeping, relaxed and unconcerned. Deborah's and Erving's taking the stand is of no constitutional significance for this was done only for purposes of laying a foundation to the challenge to the confessions. They were on the stand outside the presence of the jury and Davis had no opportunity or right to confront or cross-examine them before the jury. This does not satisfy the sixth amendment right to confrontation. See Douglas v. Alabama, supra, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934.

> "We thus conclude that on the *Bruton* issue the district court's order denying relief must be reversed and the case remanded. (415 F.2d at page 1164)"

■ Unfortunately, this case cannot be perfunctorily resolved on the basis of the Eighth Circuit's decision in *Davis*. In the *Davis* case the petitioner had been implicated in the confessions introduced against his two co-defendants, who chose not to testify before the jury at their joint trial. The right to confrontation in *Davis* was nonexistent. In spite of limiting instructions, Davis remained accused by statements of his co-defendants which could not be attacked through cross-examination. In contrast Erving, while implicated in the two confessions of his co-defendants, was afforded opportunity to cross-examine one of the defendants in the presence of the jury. However, the fact remains that the oral and written confessions of Deborah Boston contained powerfully incriminating references to the petitioner's participation in the robbery and murder. She did not take the stand. I conclude that the introduction of her confession did violate the petitioner's right to confront all witnesses against him within the meaning of the Sixth Amendment. However, not every violation of the confrontation clause vitiates the underlying state conviction.

### III.

### THE HARMLESS ERROR DOCTRINE

In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) the Supreme Court of the United States applied the harmless error doctrine to uphold a state conviction even though the principles enunciated in *Bruton* had been violated. The facts in *Harrington* and the present case are indistinguishable and for the reasons that follow I conclude the consequences should control in this case. In *Harrington* the State of California tried four defendants together for robbery and murder. At the trial the petitioner's co-defendants' confessions were introduced into evidence with appropriate limiting instructions. Only one of the three co-defendants took the witness stand, leaving the two confessions of the remaining defendants before the jury without permitting the

petitioner an opportunity to cross-examine. The Supreme Court stated:

"Rhone [a co-defendant], whom Harrington's counsel cross-examined, placed him in the store with a gun at the time of the murder. Harrington himself agreed he was there. Others testified he had a gun and was an active participant. Cooper and Bosby [the remaining co-defendants who were not subject to cross-examination] did not put a gun in his hands when he denied it. They did place him at the scene of the crime. But others, including Harrington himself, did the same. Their evidence supplied through their confessions, was of course cumulative. But apart from them the case against Harrington was so overwhelming that we conclude this violation of *Bruton* was harmless beyond a reasonable doubt * * *." (395 U.S. at 253–254, 89 S.Ct. at 1728)

■ In the present case the confession of Davis, whom the petitioner could cross-examine at the trial, placed Erving along with the other defendants and Hall in a car driven by Davis in the vicinity of the Sip 'N-Chin Bar, declared that Davis parked the car and Erving and Boston got out, and asserted that upon their return to the car Erving said "Man, let's get on away from here." (498:10) Furthermore, the state in its case-in-chief presented the testimony of several eyewitnesses to the robbery and murder who identified the petitioner as one of the robbers present in the tavern when money was taken and the bartender shot. The court is convinced that entirely apart from the confession of Boston the state's case against Erving was so overwhelming that any violation of *Bruton* constituted harmless error beyond a reasonable doubt. The state's case against Erving was "not woven from circumstantial evidence," 395 U.S. at 254, 89 S.Ct. at 1729, but was predicated upon testimony of eyewitnesses to the robbery and murder.

In the petitioner's carefully and cogently drafted brief considerable reliance

is placed upon *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). However, the following passage from *Chapman* palpably demonstrates substantial distinctions between the nature and degree of constitutional violation, which compelled the court to reject application of the harmless error doctrine:

"Thus, the state prosecutor's argument and the trial judge's instruction to the jury continuously and repeatedly impressed the jury that from the failure of petitioners to testify, to all intents and purposes, the inferences from the facts in evidence had to be drawn in favor of the State—in short, that by their silence petitioners had served as irrefutable witnesses against themselves. And though the case in which this occurred presented a reasonably strong 'circumstantial web of evidence' against petitioners [People v. Teale], 63 Cal.2d [178], at 197 [45 Cal.Rptr. 729, at 740], 404 P.2d 209, at 220, it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is completely impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments and the trial judge's instruction did not contribute to petitioners' convictions. Such a machine-gun repetition of a denial of constitutional rights, designed and calculated to make petitioners' version of the evidence worthless, can no more be considered harmless than the introduction against a defendant of a coerced confession. See, *e. g.,* Payne v. Arkansas, 356 U.S. 560 [78 S.Ct. 844, 2 L.Ed.2d 975]. Petitioners are entitled to a trial free from the pressure of unconstitutional inferences."

There was no "machine-gun repetition of a denial of constitutional rights" in this case. The confession of Boston was read to the jury by Foxall and covers less than five pages in a bill of exceptions which includes 543 pages and a large

part of her confession was cumulative. On balance I am persuaded that *Harrington* should control rather than the earlier decision in *Chapman.*

An appropriate order will be entered this day dismissing the petition.